IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADRIENNE CROW and RICKEY CROW,

    Plaintiffs,

v.                                          No. 16-cv-1315 JB/SMV

VILLAGE OF RUIDOSO, VILLAGE OF
RUIDOSO POLICE DEPARTMENT, and
AARON FROST,

    Defendants.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendants' Motion and Memorandum of Law to Dismiss and/or for Summary Judgment Against Plaintiffs' Complaint and for Qualified Immunity [Doc. 20], filed March 10, 2017. Plaintiffs responded on March 28, 2017.[1] [Doc. 23]. Defendants replied on April 11, 2017. [Doc. 25]. The Honorable James O. Browning, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 19]. Having considered the briefing, the record, and the relevant law, I find that Defendants' motion should be GRANTED.

---

[1] In addition to their response and the affidavits attached as exhibits thereto, Plaintiffs filed a "Correction of Affidavit" [Doc. 24] and "Letter by Adrienne Crow" [Doc. 30]. Plaintiffs also filed a response to Defendants' motion to strike [Doc. 29], which is not in fact a response to the motion but consists of additional narrative in support of their claims. It also contains an affidavit by Selena Crow, Plaintiff Adrienne Crow's mother and Plaintiff Rickey Crow's husband. *Id.* I have reviewed all these materials in the course of reaching my findings.

## Background

The following is a statement of the facts, as supported by the record, which I will construe in the light most favorable to Plaintiffs.[2] On February 20, 2015, Plaintiff Adrienne Crow was involved in a minor traffic accident with another vehicle at a gas station in Ruidoso, New Mexico. [Doc. 20] at 3. Ms. Crow was not the owner of the truck she drove; she took the truck from someone not a party to this case, Robin Shackelford, who had allowed the truck's actual owner to park the truck at her house.[3] *Id.* The parties dispute who was driving the other vehicle and how the accident occurred (i.e., who was responsible).[4] Both Ms. Crow and the driver of the other vehicle left the scene without reporting the accident.[5] *Id.* at 3. Subsequently, Ms. Crow contacted the police and Officer Legg took a statement from her. *Id.* at 3–4. He completed a "Record of Minor or Private Property Accident" report based on Ms. Crow's

---

[2] In their response to Defendants' motion, Plaintiffs attached their own affidavits. [Doc. 23] at 18–22. Defendants filed a Motion to Strike Exhibits Attached to Plaintiffs' Response [Doc. 28]. Defendants contend that the affidavits "contain hearsay, arguments, and conclusory allegations and do not meet the requirements of documents that may be relied upon to create an issue of fact or otherwise support" their position. *Id.* at 2. I will deny Defendants' motion to strike. The affidavits are not "pleadings" subject to a motion to strike. *See* Fed. R. Civ. P. 12(f); *Estate of Anderson v. Denny's Inc.*, 291 F.R.D. 622, 634–35 (D.N.M. 2013). Moreover, as discussed more thoroughly below, I am mindful that non-movants defending against a motion for summary judgment must come forward with facts supported by admissible evidence in order to demonstrate the presence of a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, to the extent the affidavits contain inadmissible evidence or conclusory allegations, such material does not inform my findings on the instant motion.

[3] Defendants assert that, according to Ms. Shackelford, Ms. Crow took the truck without permission. [Doc. 20] at 3, 4. Though Plaintiffs contest this factual allegation, they seem to concede that Ms. Crow did not have permission to use the truck. *See* [Doc. 23] at 2 ("Adrienne had tried, but did not obtain permission for the use of the vehicle prior to driving it.").

[4] Plaintiffs allege that as Ms. Crow pulled forward to exit the gas station, another vehicle, driven by Christopher Graff, backed into the passenger side of her truck. [Doc. 1] at 4. Defendants contend that Ms. Crow hit a vehicle driven by Cristopher's father, James Graff, while trying to get around the vehicle to exit the gas station. [Doc. 20] at 5.

[5] In their response, Plaintiffs challenge Defendants' statement of fact "insofar as the allegations do not reflect that James Graff was NOT the driver of the other vehicle, and that the driver, Christopher Graff, was the ONE who left the scene, leaving Adrienne Crow to report the accident her self!" [Doc. 23] at 1. Plaintiffs do not dispute that the accident was not reported at the scene. In fact, Ms. Crow states in her affidavit that she did not report the accident until she returned to Ms. Shackelford's residence. [Doc. 23] at 18.

account, which indicated that a vehicle backed into the right side of the truck she was driving. *Id.* at 4.

A few weeks later, on March 5, 2015, Ms. Shackelford contacted the police to inquire about the traffic accident.[6] *Id.* She told Sergeant Aaron Frost that Ms. Crow had taken the truck without her permission. *Id.* The following day, Officer Legg prepared a "Uniform Crash Report." *Id.* The report noted that "[n]o fault could be determined due to the delayed report" and that the report "was initially recorded as a private property report." *Id.* Officer Legg further noted that Sgt. Frost would be submitting a supplemental report based on the new information he had received. *Id.* That same day, Sgt. Frost spoke with Ms. Crow at the Ruidoso Police Station in the presence of her parents. *Id.* He also spoke with Christopher Graff, who stated he was a passenger in the other vehicle involved in the accident.[7] *Id.*

On March 13, 2015, Sgt. Frost completed a Supplemental Narrative. *Id.* at 5. In it, he states he informed Ms. Crow that her account of the accident did not align with that of Christopher Graff or the photos of the accident. *Id.* Sgt. Frost further states that Ms. Crow admitted to him that the accident occurred when she was moving forward to get around the other vehicle. *Id.*; [Doc. 20-1] at 2. The Supplemental Narrative also states that Ms. Crow admitted she did not have permission to drive the truck. [Doc. 20-1] at 2. Ms. Crow denies admitting that

---

[6] Plaintiffs deny this statement of fact, claiming they "cannot verify the factual validity of the allegation," but they do not provide any fact that would controvert it. *See Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." (citation omitted)); *see also Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) ("[I]n response to a properly supported motion for summary judgment, a non-movant must produce sufficient evidence for a reasonable trier of fact to find in its favor at trial on the claim or defense under consideration"). The evidence produced must be competent and legally admissible. *See Celotex*, 477 U.S. at 323 n.3; *see also* D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the [movant's] Memorandum will be deemed undisputed unless specifically controverted.").

[7] In their response to the Motion, Plaintiffs deny this statement of fact. [Doc. 23] at 2. They maintain that "Frost was . . . covering for [Christopher Graff], who was driving the offending vehicle, by claiming that . . . James Graff, his father[,] was driving." *Id.* However, Plaintiffs provide no facts to controvert this statement of fact.

she was at fault for the accident or that she did not have permission to drive the truck. [Doc. 23] at 2–3, 18.

Plaintiffs, proceeding pro se, initiated this lawsuit in December 2016 against the Village of Ruidoso, Village of Ruidoso Police Department, and Sgt. Frost, asserting claims under 42 U.S.C. § 1983. [Doc. 1] at 6–8. They allege that Sgt. Frost discriminated against Plaintiffs by falsifying the police report of the vehicle accident in order to place the fault on Ms. Crow, who is African-American, instead of Mr. Graff, who is white. *Id.* at 2. They allege that Sgt. Frost coerced Ms. Crow into altering her story in the course of preparing his supplemental report, including threatening financial and legal harm if she refused to cooperate. *Id.* at 4–5. Plaintiffs allege violations of their procedural due process, substantive due process, and equal protection rights stemming from the investigation of the accident and the filing of the supplemental police report. *Id.* at 6–8. They claim reputational and financial injury. *Id.* at 5.

Defendants filed the instant Motion to Dismiss and/or for Summary Judgment. They argue that Plaintiffs' claims do not rise to the level of a constitutional violation. As to the due process claims, they argue that Plaintiffs fail to allege and cannot show they were deprived of a constitutionally protected property interest or that, even if they could, their substantive or procedural due process rights were violated. [Doc. 20] at 2. They contend there is no constitutionally protected interest in reputation, financial status, expectancy of insurance proceeds, or an accurate police report. *Id.* As to the equal protection claim, Defendants argue that Plaintiffs cannot show they were treated differently than a similarly situated person or that, even if they could, that the different treatment was on the basis of race. *Id.* Defendants assert that Sgt. Frost is entitled to qualified immunity because Plaintiffs cannot show that he violated

their constitutional rights, much less that such rights were clearly established at the time of his alleged conduct. *Id.* at 3. They argue that Plaintiffs have failed to state a claim against the Village of Ruidoso because, even if Plaintiffs could show that Sgt. Frost violated their constitutional rights, they have failed to allege the existence of municipal policy or custom that *caused* the constitutional injury. *Id.* at 15–16. Finally, Defendants argue that the Ruidoso Police Department is not a proper party to this case and should be dismissed on that basis. *Id.* Therefore, they request that all claims be dismissed or, in the alternative, that summary judgment be entered in their favor.

## Motions to Dismiss and Motions for Summary Judgment

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "'must be enough to raise a right to relief above the speculative level.'" *Christy Sports, L.L.C. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a court must accept as true all of the allegations in a complaint, deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

5

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A nonmovant must respond to a motion for summary judgment with evidence, and the content or substance of that evidence must be admissible." *Wall v. Boone*, 1996 WL 44245, at *1 (10th Cir. 1996) (unpublished) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (where motion for summary judgment is supported by affidavits or other material provided under oath, the nonmovant must respond with affidavits or other evidence to show a genuine issue of material fact)). Although the evidence can be presented in a form not admissible, e.g., an affidavit or deposition, "the content or substance of the evidence must be admissible." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (emphasis omitted) (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)).

A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although all facts are construed in favor of the non-movant, the non-movant still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted). The non-movant "cannot avoid summary judgment merely by presenting a scintilla of evidence to support his claim; he must

6

proffer facts such that a reasonable jury could find in his favor. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

Because Plaintiffs proceed pro se,[8] I construe their filings liberally. Still, a pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013). And, when a defendant asserts qualified immunity, as discussed below, the plaintiffs still must meet their burden to overcome the defendants' assertion of qualified immunity. *See Parks v. Zasada*, 2010 WL 582353, at *1 (D. Colo. Feb. 16, 2010) (unpublished).

## **Qualified Immunity**

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test: first, the plaintiff must show that the defendant's actions violated a constitutional . . . right; second, the plaintiff must show that this right was clearly established at the time of the

---

[8] In their reply, Defendants suggest that Plaintiffs, while technically proceeding pro se, "enjoyed the assistance and benefit of counsel" in preparing their response. [Doc. 25] at 2 n.1. They suggest that Plaintiffs should not receive the benefit of "liberal construction" of their filings. *Id.* As evidence, Defendants note that they received a letter from Plaintiffs "which was mailed in an envelope from 'William N. Griffin, Attorney at Law.'" *Id.*; [Doc. 25-1]. I need not speculate as to the degree of assistance, if any, Plaintiffs received in preparing their briefing, because I find that, even liberally construing Plaintiffs' briefing, Defendants are entitled to summary judgment. I do note, however, that the Tenth Circuit has condemned the practice of "ghostwriting." *See, e.g., Duran v. Carris,* 238 F.3d 1268, 1272–73 (10th Cir. 2001) (finding that attorneys who ghostwrite for pro se litigants without identifying themselves to the court at the very least engage in misrepresentation).

conduct at issue." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). If the plaintiff satisfies this test, the defendant "then bear[s] the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

Courts have discretion to decide which of the two parts of the qualified immunity test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As to the "clearly established" prong, a right is clearly established when "every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Ordinarily, "[i]n this circuit, to show that a right is clearly established, the plaintiff must point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014)). While there need not be a case "directly on point," the "existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

The Supreme Court has cautioned the lower courts against defining the constitutional question "at a high level of generality." *Id.* at 742. The salient inquiry, rather, is "whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (internal quotation marks omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (the inquiry into whether a right is clearly established "must

be undertaken in light of the specific context of the case, not as a broad general proposition" (internal quotation marks omitted)).

## **Analysis**

Plaintiffs allege violations of their equal protection, procedural due process, and substantive due process rights based on the actions of Sgt. Frost in the course of his investigation and in the filing of his supplemental police report.[9] Ultimately, Plaintiffs take issue with Sgt. Frost's investigative decisions and final conclusions, which resulted in a police report finding Ms. Crow at fault for the minor traffic accident. Plaintiffs ascribe nefarious motives to his actions, but they can provide no facts that would be admissible as evidence to support their speculation. I find that Plaintiffs have failed to show that Sgt. Frost violated their constitutional rights on any of the alleged bases, and he should be entitled to qualified immunity. I further find that, because they have failed to show any constitutional violation, the Village of Ruidoso is entitled to summary judgment in its favor. Finally, the Village of Ruidoso Police Department is not a proper party to this action and is entitled to summary judgment. I consider each of Plaintiffs' allegations in turn.[10]

---

[9] In their response, Plaintiffs refer to the constitutional tort of malicious prosecution. *See* [Doc. 23] at 8–10. Plaintiffs did not assert a claim for malicious prosecution in their complaint. Even to the extent they seek to assert it as a claim here, it fails. A § 1983 claim for malicious prosecution requires the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). A malicious prosecution claim depends on a "confinement or prosecution." *See id.* There was none here—Plaintiffs do not claim that Ms. Crow was confined or prosecuted at all. There was no "original action" in the first instance that could have been terminated in Plaintiffs' favor. Plaintiffs have not stated a claim for malicious prosecution.

[10] In their response, Plaintiffs request additional time to take discovery pursuant to Fed. R. Civ. P. 56(d). They contend that they "are entitled to prove that Frost is lying about who was the driver, and to perhaps glean a possible motive from the evidence for the falsification of the police report." [Doc. 23] at 5–6. Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" allow time to obtain the requested discovery. Fed. R. Civ. P. 56(d). The relief that Rule 56(d) provides is available only under limited circumstances. The party seeking to defer ruling on a summary

Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1233 (10th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). In general, to establish a violation of the Equal Protection Clause, the plaintiff "must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals that are not in that class." *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1066 (D.N.M. 2010). The plaintiffs "must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

Plaintiffs allege that Sgt. Frost treated Ms. Crow differently than Mr. Graff, on the basis of race, in the course of completing the investigation following the traffic accident and filing his supplemental report—namely, by falsifying the report in order to place Ms. Crow (who is African-American) at fault, rather than Mr. Graff (who is white). They insist that his falsification of the report was racially motivated. As an initial matter, Plaintiffs provide no indication—other than their own allegations—that Sgt. Frost materially falsified his report in

---

judgment motion must explain, in an affidavit or declaration, "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (alteration in original) (internal quotation marks omitted). Setting aside the fact that Plaintiffs do not make their request via affidavit or declaration, they fail to meet the requirements set out above. They fail to set out with any degree of specificity the particular discovery they seek, let alone any of the other requirements. Particularly where a defendant asserts qualified immunity, courts "must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim." *B.T. v. Davis*, 557 F. Supp. 2d 1262, 1286 (D.N.M. 2007). I will deny Plaintiffs' request to take additional time for discovery.

order to place Ms. Crow at fault. True, Sgt. Frost's supplemental report concluded that Ms. Crow, and not the other driver, was at fault, reversing Officer Legg's earlier report. But the initial report was based solely on Ms. Crow's account of the accident. *See* [Doc. 20] at 3–4. Sgt. Frost reached his conclusions after obtaining additional evidence. He spoke with Mr. Graff and reviewed photographs of the damage to the vehicles. He concluded that this new evidence contradicted Ms. Crow's story. *Id.* Even if, as Ms. Crow suggests, she did not concede that she was at fault, there is no indication that Sgt. Frost's Supplemental Narrative was materially false.

More to the point, even accepting Plaintiffs' allegation that Sgt. Frost falsified his report to place the blame for the accident on Ms. Crow, Plaintiffs provide no evidence—beyond their own bare, conclusory allegations—that he did so on the basis of Ms. Crow's race. In support of their equal protection claim, Plaintiffs merely point out that Ms. Crow is African-American and Mr. Graff is white. But such unfounded speculation does not suffice to defeat summary judgment or Sgt. Frost's qualified immunity defense. *See A.J. ex rel. Dixon v. Tanksley*, 94 F. Supp. 3d. 1061, 1076 (E.D. Mo. 2015) ("Plaintiffs have presented no evidence to support their theory of the events and can only point to the race of the respective individuals, which is not enough to survive summary judgment."). Plaintiffs have failed to come forward with any specific facts, supported by admissible evidence, in support of their claim that they were treated differently from similarly situated persons on the basis of race. No reasonable jury could find in their favor on their equal protection claim. *See Llewellyn*, 711 F.3d at 1180.

Defendants point to persuasive authority supporting their position, particularly one case with very similar factual details. [Doc. 20] at 8–9 (citing *DuBose v. City of Milwaukee*, 2009 WL 273223 (E.D. Wis. Feb. 3, 2009) (unpublished)). In *DuBose*, the plaintiff alleged that

officers violated his equal protection rights by intentionally ignoring evidence at the scene of a car accident and including incorrect information in the police report in order to find plaintiff at fault. 2009 WL 273223, at *2–3. He alleged the officers did so on the basis of race. *Id.* The court rejected his claim, finding that his allegations "at most[] show that [the police report] did not accurately reflect the cause of the traffic accident, and that [the officers] improperly attributed fault for the accident to [the plaintiff]." *Id.* at 3. Plaintiffs contend that *DuBose* is not applicable here because there was no evidence of "falsifying records or ignoring eyewitness statements." [Doc. 23] at 16. But the plaintiff in *DuBose did* allege that officers deliberately ignored evidence at the scene and prepared a false police report. *See DuBose* at 2. Moreover, Plaintiffs provide no relevant authority in support of their position. *See* [Doc. 23] at 10–12. Plaintiffs' citations to generic language setting out the equal protection standard, or to employment discrimination cases, for example, are unpersuasive. *See id.*

Furthermore, to the extent Plaintiffs seek to assert a "class of one" theory, it is unavailing. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004). The Tenth Circuit has recognized that "Equal Protection affords protection to an individual injured by intentional or purposeful discrimination without identification of a class" where there was no rational basis for the treatment. *Id.* (internal quotation marks omitted). The class-of-one theory must be "carefully circumscribed," otherwise it "could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* Plaintiffs simply fail to point to any authority suggesting that they could prevail on a class-of-one theory on the facts of this case. Further, there is no real question that there was a rational basis for Sgt. Frost

to complete a supplemental report following the accident and initial investigation. Defendants are entitled to summary judgment on the equal protection claim.

### Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause encompasses two forms of protection: procedural due process, which "ensures the state will not deprive a party of property without engaging fair procedures to reach a decision," and substantive due process, which "ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Id.*

*Procedural Due Process*

In the Tenth Circuit, courts undertake a two-step inquiry in evaluating procedural due process claims: (1) "Did the individual possess a protected property interest to which due process protection was applicable?" and (2) "Was the individual afforded an appropriate level of process?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). To have a constitutionally protected property interest, a person "clearly must have more than an abstract need or desire for it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). He or she "must have more than a unilateral expectation of it." *Id.* The plaintiff "must, instead, have a legitimate claim of entitlement to it." *Id.* Property interests do not arise from the Constitution, but rather are "created and their dimensions are defined by existing rules or understandings that stem from

an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Once it is determined that the Due Process Clause applies (i.e., that there is a protected property interest), courts must determine "what process is due." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The essence of procedural due process "is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542 (internal quotation marks omitted). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319 (1976). The nature and formality of the hearing required depend on the nature of the interest at stake, the risk of erroneous deprivation given the interests already guaranteed, and the government's interest and burdens of additional procedure. *Id.* at 335.

Plaintiffs fail to show that Sgt. Frost deprived them of any property interest without due process because they fail to show they were deprived of a constitutionally protected property interest in the first instance. If the property right is characterized as the right to an accurate police report, Defendants point to the great weight of authority establishing that there is no such constitutionally protected property interest. [Doc. 20] at 11–12 (citing *Phillips v. Kerns*, 483 F. App'x 400, 402 (10th Cir. 2012) ("complaints deal[ing] almost exclusively with procedure such as police reports [and] responses to calls . . . . do not state any constitutional entitlement."); *Robinette v. Schirard*, 2014 WL 12649011, at *7 (D. Colo. Feb. 11, 2014) (unpublished) (finding that plaintiffs failed to allege a liberty or property interest in unadulterated police incident reports, as they had pointed to no "state law or policy which creates such a right, or which prevents police and prosecutors from amending or redacting reports"); *Tanksley*, 94 F. Supp. 3d.

at 1071 (collecting cases from across circuits stating that there is no constitutional right to a correct police report)); *see also Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969) (no property interest where plaintiff alleged patrolman knowingly and intentionally prepared, filed, and failed to correct a false accident report). Plaintiffs provide no authority to the contrary. *See generally* [Doc. 23] at 12–14. Plaintiffs repeatedly contend that they should have been entitled to some process to challenge Sgt. Frost's supplemental report, but they do not show that they had a property interest in an accurate police report in the first place.

In the alternative, the property interests might be characterized as the deprivations resulting from the allegedly false police report. Plaintiffs allege financial harm in the form of payments they had to make for damage to the vehicles from the accident to settle the insurance claims, increased insurance premiums, and the costs of having to bring the instant action to "preserve and determine their legal rights." [Doc. 23] at 13. Plaintiffs also allege injury to their reputation and some unspecified "impact on [Ms. Crow's] college entrance applications." *Id.*; *see also* [Doc. 1] at 8.

Again, however, Plaintiffs fail to provide any relevant legal authority in support of a claim that their alleged reputational and financial injuries constitute property interests that trigger constitutional due process protections. As Defendants point out, injury to one's reputation, by itself, does not rise to the level of a protected property interest. *See Doe v. Bagan*, 41 F.3d 571, 575 (10th Cir. 1994) ("Injury to reputation, by itself, is not a liberty interest protected by the Fourteenth Amendment."); *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993) ("Damage to one's reputation alone . . . is not enough to implicate due process protections."). Plaintiffs acknowledge that reputational injury alone is not an interest to which

due process protections attach, but they cite case law for the proposition that reputational injury plus "an alteration in legal status" creates a liberty interest that demands due process protections. [Doc. 23] at 12–13 (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004)). The so-called "stigma plus" test requires a plaintiff to demonstrate that "(1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that 'significantly altered [his or] her status as a matter of state law.'" *Gwinn*, 354 F.3d at 1216. As an initial matter, as Defendants point out, this standard typically applies in the context of employment cases. *See Salazar v. City of Albuquerque*, 2014 WL 6065603, at *21 (D.N.M. Oct. 27, 2014). More to the point, though, Plaintiffs provide no authority suggesting that it could apply to the facts of this case—that the supplemental police report was "sufficiently derogatory" as to injure their reputation or that Plaintiffs experienced an alteration in their "legal status" along the lines of revocation of parole or suspension of a driver's license. *See Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011).

Finally, Plaintiffs allege financial injury in the form of having to pay for damages to the vehicles their insurance would not cover and the specter of increased insurance premiums. Again, however, Plaintiffs do not show that they have a constitutionally protected property interest in insurance payouts or premiums. And Defendants have cited case law to the contrary. [Doc. 20] at 11 (citing *Tanksley*, 94 F. Supp. 3d at 1071–72; *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 508 (3d Cir. 2009)). Though Plaintiffs bemoan the fact that Sgt. Frost's report impacted their insurance claims, their recourse lies not in a due process claim. If they believe they should not have to pay the costs of repairing the damaged vehicles, or that they are entitled

16

to some other kind of insurance settlement, Plaintiffs are free to pursue state law claims against the other driver or their insurance company.

*Substantive Due Process*

As noted above, the Due Process Clause not only guarantees fair process but also provides certain substantive protections. Substantive due process "protects against arbitrary and oppressive government action, even when taken to further a legitimate government objective." *Seegmiller v. Laverkin City*, 528 F.3d 762, 766–67 (10th Cir. 2008) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)). The Tenth Circuit has recognized "two strands" of substantive due process: "One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Id.* (citing *Chavez v. Martinez*, 538 U.S. 760, 787 (2003) (Stevens, J., concurring in part and dissenting in part)).

Fundamental liberty interests are those that are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Chavez*, 538 U.S. at 775; *see also Seegmiller*, 528 F.3d at 770–71 ("The Court thus far has recognized fundamental liberty interests to consist primarily of those relating to marriage, family life, child rearing, and reproductive choices."). Plaintiffs do not allege that Defendants interfered with any fundamental liberty interest. Conduct that "shocks the conscience" is "deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Id.* at 767 (quoting *Lewis*, 523 U.S. at 846). "This strand of substantive due process is concerned with preventing government officials from 'abusing their power, or employing it as an instrument of oppression.'" *Id.* (quoting *Lewis*, 523 U.S. at 846). "Only the most egregious

17

official conduct can be said to be arbitrary in the constitutional sense." *Id.* (quoting *Lewis*, 523 U.S. at 846). A government actor's negligence is insufficient to shock the conscience. *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002). Furthermore, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)). Again, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Hyde Park Co.*, 226 F.3d at 1210.

Because Plaintiffs have failed to show that they were deprived of a liberty or property interest, their substantive due process claim also cannot survive summary judgment. Moreover, they have not shown that Sgt. Frost's investigation and supplemental report was so egregious that it satisfied the strict "shocks the conscience" standard. Plaintiffs have pointed to no authority demonstrating that Sgt. Frost's behavior constituted a violation of their substantive due process rights. Defendants have supplied authority to the contrary. [Doc. 20] at 14–15 (citing *Tanksley*, 94 F. Supp. 3d at 1069–70 (dismissing substantive due process claim based on allegations that defendant officer created a false accident report and conducted a reckless, inadequate investigation)). Defendants are entitled to summary judgment on the due process claims.

**Conclusion**

Because Plaintiffs failed to show that Sgt. Frost violated their equal protection and due process rights, much less that such rights were clearly established, he is entitled to qualified immunity and summary judgment in his favor.[11]

Likewise, the Village of Ruidoso is entitled to summary judgment in its favor. *See Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if . . . the municipal employee committed no constitutional violation."). Even if Plaintiffs could show that Sgt. Frost violated their constitutional rights, they fail to allege any municipal policy or custom that caused the alleged constitutional violations. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (noting that municipal liability may not be premised on a theory of respondeat superior); *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) ("[I]t must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.").

Finally, the Village of Ruidoso Police Department is not a proper party to this case, because it is not a separate entity that may be sued. *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (City of Denver Police Department was not separate suable entity, such that § 1983 claims against it were dismissed); *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154,

---

[11] To the extent Plaintiffs seek to sue Sgt. Frost in his official capacity, such a claim is redundant. Official capacity suits are suits against the governmental entity itself, and municipal entities (unlike states or state entities) can be sued directly for damages under § 1983 without running afoul of the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 & 167 n.14 (1985). When a municipality is sued, there is no need to assert an additional claim against a municipal officer in his official capacity. *Id.*

1186 (D.N.M. 2014) (Albuquerque Police Department was not a separate entity that could be sued; it was merely a department of the City of Albuquerque).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike [Doc. 28] is **DENIED**.

**IT IS RECOMMENDED** that Defendants' Motion and Memorandum of Law to Dismiss and/or for Summary Judgment Against Plaintiffs' Complaint and for Qualified Immunity [Doc. 20] be **GRANTED** and that summary judgment be entered in favor of Defendants.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.** **If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**